UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:13-cv-00240-MOC-DLH

| | |
|---|---|
| **EDDIE STEWART,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| **JELD-WEN, INC.,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court on Defendant's Motion for Summary Judgment (#10) and Plaintiff's Opposition to Defendant's Motion (#13). Plaintiff is a former employee of Defendant who alleges that he experienced a hostile work environment on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000, *et seq*. (hereinafter "Title VII"), and 42 U.S.C. § 1981. Plaintiff alleges that, while working for Defendant, he was subject to a hostile work environment in that Defendant intentionally discriminated against and harassed Plaintiff: 1) because of his race, and 2) in retaliation for filing a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and complaining about discriminatory treatment in the workplace. Defendant denies that Plaintiff has stated a cognizable claim, and filed its Motion for Summary Judgment on July 30, 2014, to which Plaintiff opposes. Oral arguments on Defendant's Motion for Summary Judgment were held on October 6, 2014. Having carefully considered the motions, briefs, and oral arguments, the court enters the following findings, conclusions, and Order.

1

## I. Factual Background

Plaintiff Eddie Stewart is an African-American adult male and resident of McDowell County, North Carolina. Defendant JELD-WEN is a multi-national company that manufactures building products, including windows and interior and exterior doors. JELD-WEN is headquartered in Klamath Falls, Oregon, with its North American headquarters in Charlotte, North Carolina. At the time plaintiff filed his complaint, JELD-WEN owned and operated a manufacturing plant in Marion, North Carolina, which closed in September 2013. JELD-WEN hired Plaintiff first as a temporary employee at the Marion plant in August 2012; Plaintiff became a permanent employee with JELD-WEN on December 7, 2012. Plaintiff held the position of General Utility during his entire employment, and completed job duties that included housekeeping, preventative maintenance, and working on different machines when filling in for absent employees or vacant employee positions.

Plaintiff complains of racial harassment by JELD-WEN employees and a hostile work environment at the plant. Plaintiff cites several instances where he witnessed his supervisor making what he believed to be racially discriminatory comments, but focuses his claims on three main incidents/patterns of conduct: 1) his coworker's repeated use of the word "boy" throughout his employment, 2) this same coworker kicking him in the behind, attempting to bait him into a physical fight and telling him "the police ain't going to go for a black boy hitting a white woman," and 3) his discovery of a noose in the bed of his truck when leaving his night shift at the plant. Plaintiff reported all of these incidents to his supervisors, and though they took some disciplinary action, Plaintiff felt it was inadequate to cure the hostility he felt in the workplace on the basis of his race. These events are described more thoroughly below.

Mr. Stewart claims that immediately upon beginning his employment in August 2012, his coworker Natalie Baker began calling him "boy" and continued to do so every time they saw each other, which was about four times a day. Mr. Stewart also states that the only other person whom Ms. Baker addressed as "boy" was the one other African-American employee at the plant. Mr. Stewart found the use of the word "boy" racially derogatory. Mr. Stewart claims that he complained numerous times to his supervisors about Ms. Baker's use of the word "boy." One of them reportedly told Mr. Stewart to ignore her, but no supervisor took any other remedial action.

On May 15, 2013, Ms. Baker came up to Mr. Stewart at work, kicked him in the behind with her steel-toed boots, tried to bait him into hitting her, and in response to Mr. Stewart stating that he would call the police, declared that "the police ain't going to go for a black boy hitting a white woman." Mr. Stewart reported the incident to the JELD-WEN production manager. The JELD-WEN plant manager investigated the incident, found that Ms. Baker admitted to the conduct (both the kicking and the use of "boy"), and suspended Ms. Baker for three days without pay and required her to attend counseling. In early June 2013, Mr. Stewart was placed on the night shift. Ms. Baker remained on the day shift. Consequently, the two saw one another less frequently.

Shortly thereafter, Mr. Stewart confronted his previous (daytime) shift supervisor about what he believed to be JELD-WEN's toleration of racially discriminatory behavior. He threatened to take legal action against the company. Mr. Stewart states that he did this in an open area where numerous employees heard his complaints and threats of legal action.

Mr. Stewart filed a Charge of Discrimination with the EEOC on June 10, 2013, citing the kicking incident and Ms. Baker's repeated use of the word "boy" in reference to Mr. Stewart. The claim was dismissed without further investigation. On July 15, 2013, after leaving his night shift at the plant, Mr. Stewart arrived at his car to find a hangman's noose in the back of his

truck. Mr. Stewart alerted the night shift supervisor, who was nearby. This supervisor took the noose and reported the incident to the plant manager, Mr. Jim English, and production manager, Mr. Craig Plucker. Mr. Stewart attended a meeting with these two men shortly thereafter. When Mr. Stewart asked what they had done to investigate the incident, they told him that they had looked in other cars in the employee parking for rope but had not found any. Mr. English also talked to some employees to see if he could figure out who was behind the noose incident, but did not discover any helpful information. That was the extent of their investigation and JELD-WEN took no further action on the matter.

Nine days later, Plaintiff filed another a Charge of Discrimination with the EEOC, this time alleging retaliation for his first EEOC charge. This charge was dismissed without further investigation. Plaintiff received right to sue letters from the EEOC for both claims.

Plaintiff continued to work at JELD-WEN until September 17, 2013, when the plant shut down and he was laid off along with the majority of the staff. Plaintiff does not dispute that he was terminated for legitimate business reasons and admits that he is not entitled to back wages or benefits as the result of his termination. He does, however, seek emotional distress damages related to Ms. Baker's physical assault and the noose incident.

## II. ANALYSIS OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure, provides:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

4

Fed.R.Civ.P. 56(a). On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial.*" Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp, 475 U.S. 574, 586–87 (1986) (citations omitted; emphasis in the original) (quoting Fed.R.Civ.P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Id. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a motion for summary judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnic, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, 477 U.S. at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id. at 252.

**B. Plaintiff's Title VII Claim**

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…race." 42 U.S.C. § 2000e–2(a)(1) (2000). "Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 313 (4th Cir. 2008) (quoting E.E.O.C. v. R&R Ventures, 244 F.3d 334, 338 (4th Cir. 2001)). A Title VII claim for a racially hostile work environment requires Plaintiff to show that the harassment was (1) unwelcome; (2) based on race; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and 4) that there is some basis for imposing liability on the defendant. Spriggs v. Diamond Auto Glass, 242 F.3d 179, 184 (4th Cir. 2001).

*1) The Harassment Plaintiff Complains of was Unwelcome*

There is no genuine dispute that the actions Plaintiff complains of were unwelcome and thus, this element is a non-issue for purposes of summary judgment. Stewart complained about being called "boy," the kicking incident, and the noose. Stewart has explicitly testified that he did not welcome the racially harassing conduct; Defendant acknowledges the conduct as unwelcome.

*2) The Harassment Plaintiff Complains of was Based on Race*

There is no genuine dispute that the actions Plaintiff complains of were based on race. First, "boy" is a racial epithet if used in the right context. Ash v. Tyson Foods, Inc., 126 S.Ct. 1195, 1197 (2006); Jones v. Dole Food Co., Inc., 827 F. Supp. 2d 532, 552 (W.D.N.C. 2011) ("boy" in a racially derogatory context is a racial pejorative and is "never acceptable and which any reasonable, civil person would find objectionable and offensive"); Lee v. Norfolk Southern Ry. Co., 912 F. Supp. 2d 375, 382 (W.D.N.C. 2012) (calling an adult African American male "boy" is a "racial insult"). Here, considering the context of Ms. Baker's use of the term in the light most favorable to Plaintiff, her motivations for such language were racial. Second, the kicking incident was charged with racial overtones, as Ms. Baker reportedly told Mr. Stewart after kicking him and trying to start a fight, "the police ain't going to go for a black boy hitting a white woman." Her repeated use of the word "boy" and implication that the police provided her preferential treatment because of her race were clearly racially motivated. Third, it goes without saying that a noose is a powerfully jarring symbol for African-Americans. See Alford v. Martin & Gass, Inc., 391 Fed.Appx. 296 (4th Cir. 2010) (acknowledging, in affirming the district court's decision, that a noose has a "deeply hurtful meaning"). Defendant acknowledges the racial implications of the noose by conceding that it constitutes severe harassment because of race.

*3) There is a Genuine Issue of Material Fact as to Whether Plaintiff Suffered Severe and Pervasive Harassment*

The "severe or pervasive" element of a hostile work environment claim has both subjective and objective components. E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). First, Plaintiff must show that he "subjectively perceive[d] the environment to be abusive." He must then show that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive. Id. (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81–82 (1998)). Plaintiff argues that the facts show

7

severe and pervasive harassment both subjectively and objectively. Defendant does not dispute that Plaintiff subjectively perceived the harassment as severe and pervasive, but argues that Plaintiff has failed to show the objective component of the severe or pervasive prong.

When determining whether the harassing conduct was objectively "severe or pervasive," the court must look "at all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (quoting Harris v. Forklift Systems, Inc. 510 U.S. 17, 22 (1993)). The harassing "conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment." Id. (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)). Simple teasing, offhand comments, and isolated incidents do not meet this standard. Id. "The task then on summary judgment is to identify situations that a reasonable jury might find to be so out of the ordinary as to meet the severe or pervasive criterion. That is, instances where the environment was pervaded with discriminatory conduct 'aimed to humiliate, ridicule, or intimidate,' thereby creating an abusive atmosphere." Id. at 316 (quoting Jennings v. Univ. of North Carolina, 482 F.3d 686, 695 (4th Cir.2007) (en banc)).

Here, the facts presented could lead a reasonable jury to find that Plaintiff's work environment was indeed pervaded with discriminatory conduct intended to intimidate and ridicule him. Plaintiff reports a coworker routinely directing racial slurs at him, physically assaulting him while making racially derogatory statements, and finding a noose in the back of his truck at work. The actions about which Plaintiff complains far surpass accusations of simple teasing or an isolated offhand comment. A reasonable jury could believe that Plaintiff worked in an abusive atmosphere.

*4) There is a Genuine Issue of Material Fact as to Whether Liability can be Imputed to JELD-WEN*

The Fourth Circuit has articulated the following standard for assessing whether an employer is liable for the harassment that an employee suffers in the workplace at the hand of a coworker:

> Where an employee has been harassed by a coworker, the employer may be liable in negligence [under the fourth element] if it knew or should have known about the harassment and failed to take effective action to stop it. Once the employer has notice, then it must respond with remedial action reasonably calculated to end the harassment.
> …
> There is no exhaustive list or particular combination of remedial measures or steps that an employer need employ to insulate itself from liability. Among other things, we have considered the promptness of the employer's investigation when complaints are made, whether offending employees were counseled or disciplined for their actions, and whether the employer's response was actually effective. However, the mere fact that harassment reoccurs in the workplace, either by the same offender or different offenders, does not, *ipso facto,* allow a jury to conclude that an employer's response was not reasonably calculated to end the harassment.

E.E.O.C. v. Xerxes Corp., 639 F.3d 658, 669 (4th Cir. 2011) (internal citations and quotation marks omitted). Defendant claims that JELD-WEN took appropriate remedial action in response to all of Plaintiff's complaints of racially discriminatory harassment. Plaintiff argues otherwise, claiming that JELD-WEN's response to his complaints did not constitute effective remedial action. Here, Plaintiff argues that Defendant knew about Ms. Baker's use of the word "boy" to address him but took no effective action to stop it. He further argues that Ms. Baker's suspension from work as discipline for kicking Mr. Stewart was not effective remedial action because Plaintiff suffered further racial discrimination in the workplace. Finally, Plaintiff argues that Defendant's "investigation" in response to Mr. Stewart discovering a noose in the back of his truck was lackadaisical, out of compliance with its own anti-harassment policy, and otherwise non-effective.

9

Both parties refer the court to Alford v. Martin & Gass, Inc., 391 F. App'x 296, 304 (4th Cir. 2010), in which the Fourth Circuit found, *inter alia*, that a company responded appropriately to an employee's complaints of finding a hangman's noose around a sweatshirt with a black pipe stuffed inside on his job site. In that case, the employer was found to have reacted reasonably to the crudely constructed effigy by immediately interviewing all employees, telling them that such conduct was unacceptable, ascertaining those responsible, and reprimanding the culpable parties through oral and written warnings that future inappropriate conduct would result in termination. See id. at 303-04. By contrast, here, Defendant did nothing more than perform a cursory sweep of the parking lot for rope and ask employees whether they knew about the noose. The court finds that such a response falls below that deemed appropriate by the Fourth Circuit in Alford.

Here, the facts presented could lead a reasonable jury to find that Defendant knew about the harassment Plaintiff complains of and failed to respond with remedial action reasonably calculated to end the harassment.

For the above reasons, the court will deny Defendant's Motion for Summary Judgment as to Plaintiff's Title VII claim because genuine issues of material fact exist as to whether Plaintiff was subject to a hostile work environment on the basis of his race. The evidence of JELD-WEN's failure to take more extensive action in light of Plaintiff's repeated reports of racial discrimination in the workplace is such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**C. Plaintiff's § 1981 Retaliation Claim**

Plaintiff also alleges that Defendant intentionally discriminated against him by placing a noose in the back of his truck in retaliation for filing his first EEOC claim and complaining about discriminatory treatment at JELD-WEN. "Title VII retaliation claims must be proved according

to traditional principles of but-for causation…[t]his requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013). Plaintiff bases his retaliation claim on two factual contentions: 1) that his complaints of racial harassment at work were well-known, and 2) that he threatened legal action against JELD-WEN in front of other employees. Plaintiff has not, however, made any connection between these facts and a retaliatory motive on the part of any JELD-WEN management representative. Even assuming that both of Plaintiff's factual allegations are true, and considering every reasonable inference in his favor, his retaliation claim fails because he cannot establish the necessary "but-for" causal link required by Nassar. The fact that Plaintiff found a noose in the back of truck approximately one month after filing his EEOC claim and loudly complaining about racial discrimination at work is not sufficient to establish that his engagement in protected activity was a "but for" cause of further racial discrimination (the noose). The court will therefore grant Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claim, but notes that its decision in no way precludes Plaintiff from presenting evidence relating the noose incident in his Title VII claim.

### III. DEFENDANT'S MOTION TO STRIKE

The court also addresses Defendant's Motion to Strike portions of the Affidavits of Eddie Stewart and Blake Stevens (#15) and Plaintiff's Opposition to Defendant's Motion (#18). Defendant urges the court to strike certain statements in the affidavits of Plaintiff and his former JELD-WEN coworker Blake Stevens, arguing that they contain contradictory testimony, hearsay, and statements that lack personal knowledge. The court finds that any discrepancies in the statements of these affidavits do not merit a motion to strike, but remain fodder for cross-examination at trial.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment (#10) is **DENIED** as to plaintiff's First Cause of Action under Title VII, and **GRANTED** as to Plaintiff's Second Cause of Action for retaliation under § 1981. It is further **ORDERED** that Defendant's Motion to Strike portions of the Affidavits of Eddie Stewart and Blake Stevens (# 15) is **DENIED**. The parties are also instructed that the court has placed this case on the trial calendar for calendar call on January 12, 2015.

Signed: October 14, 2014

Max O. Cogburn Jr.
United States District Judge